MACKIN and another *v.* UNITED STATES.

(*Circuit Court, N. D. Illinois.* March 24, 1885.)

1. CRIMINAL LAW AND PROCEDURE—WRIT OF ERROR TO DISTRICT COURT—STAY OF SENTENCE—ACT 1879, § 1.
   Under section 1 of the act of 1879 a writ of error is not a writ of right, but to be allowed in the discretion of the circuit judge, and if he allows it, it is also in his discretion whether he will stay the sentence.

2. SAME—WRIT AND STAY, WHEN GRANTED.
   If, upon the errors complained of, there be any doubt, or room for fair debate, the accused should not be denied an opportunity to take the deliberate judgment of the circuit court upon the rulings of the district court, if those rulings have affected the judgment and sentence of that court; and in such a case the proceedings under the sentence should be stayed. Writ of error allowed, and proceedings stayed.

Petition in Error.

*R. S. Tuthill* and *J. R. Doolittle*, for the Government.

*J. B. Hawley* and *I. N. Stiles*, for the Citizens' Committee.

*H. W. Thompson*, *E. A Storrs*, and *Judge Turpie*, for defendants in error.

GRESHAM, J. The prosecution in this case was commenced under section 5440, Rev. St., by information filed by the district attorney, containing seven counts, charging that the defendants conspired to commit the offenses described in sections 5403, 5511, and 5512. Gleason, Mackin, and Gallagher were convicted upon all the counts, and the two latter were sentenced to pay a fine of $5,000 each, and to imprisonment in the penitentiary at Joliet for two years. Beihl was acquited. Mackin and Gallagher, by their petition, ask the circuit for a writ of error, and for a stay of sentence until the rulings of the district court shall have been reviewed.

The first count in the information charges that at the late election a large number of votes were cast at the second election precinct of the eighteenth ward of the city of Chicago, in Cook county, for a representative in congress, and for state and county officers; that the judges of election canvassed the votes, and the proper clerks made two tally-lists showing the number of votes received by each candidate; that on the day after the election the judges and clerks certified on each poll-book the number of votes cast for each person voted for; and thereupon, one of the poll-books with the certificate indorsed thereon, and one of the tally-lists, together constituting the return from such precinct, properly enveloped and sealed, were delivered by one of the judges to the county clerk and his deputies at the clerk's office, whose duty it was to safely keep and guard the same; and that Mackin, Gallagher, Gleason, and Beihl conspired to break open such package, mutilate and alter the certificate, destroy the tally-list, and substitute in its place a false and spurious paper. The separate acts charged to have been done in furtherance of the conspiracy are:

(1) That Gleason and Beihl made opportunity for and permitted the package to be broken open, and the return taken therefrom, altered, and falsified. (2) That Mackin and Gallagher unlawfully broke open the package and removed therefrom such return. (3) That Gallagher unlawfully mutilated and altered such certificate by erasing the word "four" in the sentence "Henry W. Leman had four hundred and twenty votes for state senator," and wrote in place thereof the word "two," so as to make the sentence read, "Henry W. Leman had two hundred and twenty votes for state senator;" and erased the word "two" from the sentence "Rudolph Brand had two hundred and seventy-four votes for state senator," and wrote in place thereof the word "four," so as to make the sentence read "Rudolph Brand had four hundred and seventy-four votes for state senator." (4) That Gallagher made a false and spurious paper, and substituted the same in place of the genuine list; and (5) that Mackin and Gallagher unlawfully made way with and destroyed the genuine tally-list.

The second and third counts embrace the ballots, as well as the other papers described and embraced in the first count.

The fourth count charges that the defendants conspired to interfere with Michael Ryan, the clerk of Cook county, and such two justices of the peace as he might associate with him in the discharge of his duties, in opening and canvassing the several returns of the election within Cook county, such interference to be effected by mutilating and altering the certificate on the poll-book deposited in the clerk's office before the opening and canvassing of the returns from the second precinct, and by removing from the county clerk's office, and destroying, the tally-list deposited therein, and substituting for and in place thereof a false and spurious paper, purporting to be such tally-list; and that in furtherance of this conspiracy the defendants altered the certificate on the poll-book, making it appear that Leman had received for state senator the number of votes cast for Brand, and that the latter had received the number of votes cast for Leman; and that the defendants removed from the clerk's office, and destroyed, the tally-list deposited therein, and substituted for and in place of it a false and spurious paper.

The conspiracy charged in the fifth count was to destroy the papers described in the fourth count, and, in addition thereto, a large number of ballots which had been deposited in the clerk's office. In furtherance of this conspiracy, it is charged that the defendants destroyed the ballots, as well as the other papers deposited in the clerk's office, and substituted in their place spurious ballots and papers.

The sixth count charges that the returns of the poll of the second precinct had been deposited in the clerk's office, as stated in the previous counts; and that the defendants conspired to steal, carry away, and destroy part of such returns, to-wit, the tally-list; and that to effect the object of this conspiracy they unlawfully did steal and destroy such tally-list, and substitute for it a fabricated tally-list.

The seventh count charges that the defendants conspired to steal from the county clerk's office a large number of ballots, and one of the poll-books deposited therein as part of the return of the election at such second precinct, and destroy the same; and that in furtherance of this conspiracy the defendants actually did steal, from the clerk's office, and destroy, a large number of the ballots and the poll-book so deposited therein, and substituted in the place thereof spurious papers, purporting to be the genuine ballots and poll-book.

The first, second, and third counts are based upon sections 5515 and 5512; the fourth and fifth counts upon section 5511; and the sixth and seventh counts upon section 5403.

Section 5515 declares that every officer of an election at which any representative or delegate in congress is voted for, whether such officer be appointed or created by or under any law or authority of the United States, or by or under any state, territorial, district, or municipal law or authority, who neglects or refuses to perform any duty in regard to such election required of him by any law of the United States, or of any state or territory thereof, or who violates any duty

so imposed, or knowingly does any act thereby unauthorized with intent to affect any such election, or the result thereof, or who fraudulently makes any false certificate of the result of such election in regard to any such representative or delegate, or who withholds, conceals, or destroys any certificate or record so required by law, respecting the election of any such representative or delegate, or who neglects or refuses to make and return such certificate, as required by law, shall be punished, etc.

Section 5512 declares that if, at any registration of voters for an election for representative, or delegate in congress, any person, by force, threats, menace, intimidation, bribery, reward, or offer or promise thereof, interferes with any officer of registration in the discharge of his duties, or by any such means, or other unlawful means, induces any officer of registration to violate or refuse to comply with his duties, or, if any such officer or other person who has any duty to perform in relation to such registration or election in ascertaining, announcing, or declaring the result thereof, or in giving or making any certificate, document, or evidence in relation thereto, knowingly neglects or refuses to perform any duty required by law, or violates any duty imposed by law, or does any act unauthorized by law relating to or affecting such registration or election, or the result thereof, or any certificate, document, or evidence in relation thereto, every such person shall be punishable, etc.

Section 5511 declares that if, at any election for representative, or delegate in congress, any person, by force, threats, intimidation, bribery, reward, or offer thereof, unlawfully prevents any qualified voter, of any state or territory, from freely exercising the right of suffrage, or in any manner interferes with any officer of such election in the discharge of his duty, or by any such means, or other unlawful means, induces any officer of election, or officer whose duty it is to ascertain and announce, or declare, the result of any such election, or give or make any certificate, document, or evidence in relation thereto, to violate or refuse to comply with his duty, or any law regulating the same, he shall be punished, etc.

Section 5403 declares that every person who willfully destroys, or attempts to destroy, or with intent to steal or destroy, takes and carries away any record, paper, or proceeding of a court of justice, filed or deposited with any clerk or officer of said court, or any paper, or document, or record, filed or deposited with any such public officer, or with any judicial or public officer, shall, without reference to the value of the record so taken away, be punished, etc.

Section 59, *c.* 46, Rev. St. Ill., provides that the ballots counted by the judges of election, after being read, shall be strung upon a thread in the order in which they have been read, and then carefully enveloped and sealed up by the judges, who shall direct the same to the officer to whom by law they are required to return the poll-books, and shall be delivered, together with the tally-books, to such officer, who

shall carefully preserve said ballots for six months, and at the expiration of that time shall destroy them without the package being previously opened: provided, that if any contest of election shall be pending at such time, in which such ballots may be required as evidence, the same shall not be destroyed until such contest is finally determined.

Section 51 provides that when the votes shall have been examined and counted, the clerks shall set down in their poll-books the name of every person voted for, written at full length, the office for which such person receives such votes, and the number he did receive, the number being expressed in words at full length; such entry to be made, as nearly as circumstances will permit, in a prescribed form.

Section 62 provides that such certificate, together with one of the lists of voters, and one of the tally-papers, having been carefully enveloped and sealed up, shall be put into the hands of the judges or board of election, who shall, within four days thereafter, deliver the same to the county clerk or his deputy, at the office of the county clerk, and when received, such clerk or deputy shall proceed to open, canvass, and publish the returns from each precinct or election district as provided by law.

Section 71 provides that within seven days after the close of the election the county clerks of the respective counties, with the assistance of two justices of the peace of the county, shall open the returns and make abstracts of the votes in the form prescribed; the votes for governor and other state officers on one sheet, and the votes for representatives to congress on another sheet.

Motions were made at the proper time to quash the information, in arrest of judgment, and for a new trial, all of which were overruled by the district judge. The fifth amendment to the constitution of the United States declares that no person shall be held to answer for a capital, or otherwise infamous, crime, unless on a presentment or indictment of a grand jury. The defendants were tried on an information filed by the district attorney, and not on an indictment found by a grand jury; for which reason it is claimed the trial, conviction, and sentence were illegal.

It is further urged on behalf of the defendants that the only ground upon which the jurisdiction of the district court can be maintained is that the acts charged in the information were done to influence the election of a representative in congress, and that the information contains no such averment. The sixth and seventh counts charge that the defendants conspired to violate section 5403 by stealing from the county clerk's office, where they had been deposited as required by law, the tally-sheets, poll-book, and ballots; and that they actually did steal, carry away, and destroy such papers. Congress passed an act in 1853, (10 St. at Large, 170,) entitled "An act for the prevention of frauds upon the United States treasury," the fourth and fifth sections of which were carried forward into the Revised

Statutes as section 5403. It is claimed that the clerk's office is not a public office, within the meaning of this section; that it contemplates public offices of the United States only; and that, therefore, the district court had no jurisdiction of the offenses charged in the sixth and seventh counts. Other errors are assigned, which need not now be noticed.

The circuit court, under section 1 of the act of 1879, has jurisdiction of writs of error in all criminal cases tried before the district court, where the sentence is imprisonment, or a fine exceeding $300. Section 2 provides that the defendant may petition for a writ of error on the judgment of the district court in the cases named in section 1, which petition shall be presented to the circuit judge or circuit justice, who, on consideration of the importance and difficulty of the questions presented in the record, may allow a writ of error, and may order that such writ shall operate as a stay of proceedings under the sentence; but the allowance of the writ shall not so operate without such order. The statute does not say that the circuit judge or circuit justice shall allow the writ of error, and make it operate as a stay of proceedings. The language is that the circuit judge or circuit justice, "on consideration of the importance and difficulty of the questions presented in the record, may allow a writ of error." It is plain that under this statute a writ of error is not a writ of right. It is in the discretion of the judge to whom the application is made to allow the writ or deny it; and if he allows it, it is also in his discretion whether he will stay the sentence. Of course, this discretion is a legal one, and in its exercise the defendant should have the benefit of any doubts arising upon the questions of law presented by the record. If, upon the errors complained of, there be any doubt, or room for fair debate, the defendants should not be denied an opportunity to take the deliberate judgment of the circuit court upon the rulings of the district court, if those rulings have affected the judgment and sentence of that court, and in such a case, the proceedings under the sentence should be stayed. A different construction of the statute would defeat the manifest intention of congress. *U. S.* v. *Whittier,* 11 Biss. 356.

I cannot say the record presents no question of sufficient difficulty and importance to entitle the defendants to a writ of error, and an order staying proceedings under the sentence.

The sole question now decided is that the defendants are entitled, under the statute of 1879, to have the rulings of the district court reviewed by this court, and a stay of proceedings until that is done.