## ROGERS v. WATSON et al.

### No. 4368.

Circuit Court of Appeals, Seventh Circuit, Jan. 19, 1931.

Rehearing Denied Feb. 16, 1931.

Otto Gresham, of Chicago, Ill., for appellant.

William L. Taylor, Jackson Carter, Arthur L. Gilliom, and Albert Ward, all of Indianapolis, Ind., for appellees.

Before EVANS and PAGE, Circuit Judges, and LINDLEY, District Judge.

PAGE, Circuit Judge.

Appellant, a citizen and resident of Indiana, sued appellees, also citizens and residents of Indiana, in the United States District Court for the Southern District of that state, to recover damages for injuries to appellant's business and reputation because of alleged acts of intimidation, and false and slanderous statements made and circulated by appellees, conspiring together.

Two defendants were not served with process, and made no appearance. All other defendants challenged the jurisdiction of the court, and this appeal is from an order dismissing the case for want of jurisdiction. All defendants, including the two who did not appear, are named as appellees.

The questions are: (1) Was the order of dismissal final and appealable; (2) was the

appeal perfected; and (3) did the court have jurisdiction?

■ Appellees base their contention that there is no appealable order on Hohorst v. Hamburg-American Packet Co., 148 U. S. 262, 13 S. Ct. 590, 37 L. Ed. 443, wherein several defendants were jointly charged with infringement of a patent. All parties were before the court, and the case was dismissed as to the Hamburg Company because it was not sued in a District whereof it was an inhabitant (28 USCA § 112). No disposition was made as to the other defendants who had been served with process and were before the court. The complaint here shows no diversity of citizenship, and it is admitted that there was none as to any defendant. If jurisdiction depends upon diversity of citizenship, as insisted by appellees, then the whole case necessarily ended because the District Court would be without power to issue process to bring parties before it in a cause where it had no jurisdiction. We are of opinion that the judgment was final.

■ Although the proceedings before the court in connection with the allowance of appeal are somewhat informal, yet the record shows that an appeal was prayed, errors assigned, bond approved, and citation issued. That was sufficient. In re Fiechtl (7th C. C. A.) 107 F. 618; Loveless v. Ransom (7th C. C. A.) 109 F. 391. See, also, Ross v. White (C. C. A.) 32 F.(2d) 750.

In his statement of the contested issues, appellant says:

"The power to bring such a suit as this appellant contends was reserved to him by the Constitution of the United States as it came from the National Convention September 17, 1787, without amendments."

Elsewhere, appellant states:

"We claim we are proceeding under Constitutional provision, clause 1 of section 1, of the 14th Amendment."

He further says:

"Chisholm v. Georgia, 2 Dall. 419, 1 L. Ed. 440; Ex parte Milligan, 4 Wall. 2, 18 L. Ed. 281, and Milligan v. Hovey, 17 Fed. Cases 380, No. 9605, in the Circuit Court for the District of Indiana, are the cases upon which we principally rely."

In the Georgia Case, the question was: May a state be sued in the United States Supreme Court by a citizen of another state? No good purpose will be served by discussing the case further than to say that we do not find in it any question as to the jurisdiction of any "inferior court" that Congress was, by section 1, article 3, of the Constitution of the United States authorized to "ordain and establish."

In the Milligan Case, the question was whether a military commission, organized during the Civil War in a state not invaded and not engaged in rebellion, in which the federal courts were open and in the proper and unobstructed exercise of their judicial functions, had jurisdiction to try, convict, or sentence for any criminal offense a citizen who was neither a resident of a rebellious state, nor a prisoner of war, nor a person in the military or naval service. The case was submitted to the Supreme Court on three questions:

"1st. 'On the facts stated in said petition and exhibits, ought a writ of habeas corpus to be issued?'

"2d. 'On the facts stated in said petition and exhibits, ought the said Lambdin P. Milligan to be discharged from custody as in said petition prayed?'

"3d. 'Whether, upon the facts stated in said petition and exhibits, the military commission mentioned therein had jurisdiction legally to try and sentence said Milligan in manner and form as in said petition and exhibits is stated?' "

The first two questions were answered in the affirmative, and the third in the negative. The real question was whether under the Act of March 3, 1863 (12 U. S. Stat. p. 755), the President of the United States had the power to suspend the writ of habeas corpus as to Milligan. Although paragraph 2, section 9, article 1, of the Constitution provides that the "privilege of the writ of habeas corpus shall not be suspended, unless when in cases of rebellion or invasion the public safety may require it," yet the authority to issue writs of habeas corpus, and under which the jurisdiction of the Circuit Court of Indiana was invoked, was provided in section 14 of the Judiciary Act of 1789 (28 USCA § 452). The claim that the writ had been suspended as to Milligan was based upon congressional action. We do not find in the Milligan Case any support for appellant's contention; no such question was there before the court.

Whether the judicial powers given by the Constitution are as broad as contended for by appellant seems to us unimportant in the face of the fact that as long ago as Turner v. Bank of North America, 4 Dall. 10, 1 L. Ed. 718, Mr. Justice Chase said:

"The notion has frequently been entertained, that the federal courts derive their judicial power immediately from the constitution; but the political truth is, that the disposal of the judicial power (except in a few specified instances) belongs to congress. If congress has given the power to this court, we possess it, not otherwise; and if congress has not given the power to us, or to any other court, it still remains at the legislative disposal."

In Nashville v. Cooper, 6 Wall. 247, 252, 18 L. Ed. 851, the Supreme Court said:

"As regards all courts of the United States inferior to this tribunal, two things are necessary to create jurisdiction, whether original or appellate. The Constitution must have given to the court the capacity to take it, and an act of Congress must have supplied it. Their concurrence is necessary to vest it."

In Kline v. Burke Const. Co., 260 U. S. 226, 234, 43 S. Ct. 79, 82, 67 L. Ed. 226, 24 A. L. R. 1077, it was said:

"Only the jurisdiction of the Supreme Court is derived directly from the Constitution. Every other court created by the general government derives its jurisdiction wholly from the authority of Congress."

To the same effect are Sheldon v. Sill, 8 How. 441, 449, 12 L. Ed. 1147; The Sewing Machine Companies, 18 Wall. 553, 577, 21 L. Ed. 914; Stevenson v. Fain, 195 U. S. 165, 25 S. Ct. 6, 49 L. Ed. 142.

In the face of these repeated rulings, we cannot hold that the District Court, independent of statutory authorization, had jurisdiction of this case.

The judgment is affirmed.