### TINKOFF v. UNITED STATES.
#### No. 5471.

Circuit Court of Appeals, Seventh Circuit.
Oct. 16, 1936.

Rehearing Denied Jan. 15, 1937.

Paysoff Tinkoff, of Chicago, Ill., pro se.

Michael L. Igoe, U. S. Atty., of Chicago, Ill., Earl C. Crouter, Atty., Department of Justice, and Carl R. Perkins, and Edward J. Lawler, Jr., Sp. Attys., U. S. Treasury Department, all of Washington, D. C., and Leo J. Hassenauer, Asst. U. S. Atty., and E. Riley Campbell, Sp. Asst. U. S. Atty., both of Chicago, Ill.

Before ALSCHULER, Circuit Judge, and LINDLEY and BALTZELL, District Judges.

LINDLEY, District Judge.

Appellant appeals from a conviction on an indictment returned June 14, 1932, charging him and one Newman with willful attempt to defeat and evade income taxes for the year 1928 due from Newman and two companies controlled by him. Newman pleaded guilty, and appellant was tried alone. He is a former revenue agent, a certified public accountant and a lawyer.

It appears that on December 6, 1934, after his appeal had been allowed and was pending, appellant was, against his protest, taken to the penitentiary at Leavenworth, there to serve the sentence of 18 months' imprisonment which the court had imposed, and that he remained there until December 2, 1935, when he was temporarily released by order of the United States Circuit Court of Appeals of the Tenth Circuit. It seems a petition for habeas corpus had been filed in the Kansas District Court, which court denied the relief, and, on appeal to the Circuit Court of Appeals, that court, holding that it was improper to commit him to the penitentiary against his will while his appeal from the judgment was pending, ordered him to be released for a limited time in order that he might in this court prosecute his appeal or other proceeding, which appears more fully from the report of that case in Tinkoff v. Zerbst (C.C.A.) 80 F.(2d) 464. This court having reinstated his appeal, which it had theretofore dismissed, extended the period of the release fixed by the court in the Tenth Circuit, and under such extension appellant is still at liberty on bond.

On June 15, 1934, appellant was found guilty on both counts of the indictment. On July 3d an order was entered fixing the time for filing bill of exceptions at 30 days. On July 24th the court continued till July 30th a motion for new trial. On the latter date the court overruled the motion for new trial and entered judgment of conviction, and on July 31st the court again fixed, as the time for filing bill of exceptions, September 3, 1934. On August 17th the court extended its stay of execution upon the sentence to October 15th. On August 31st defendant moved for an extension of time within which to file bill of exceptions and for a new trial,

and same was continued until October 15th, and again on the latter date to November 3d. On October 26th defendant moved for allowance of an appeal. On October 30, 1934, upon appellant's motion, the court entered an order allowing the appeal and directed that it be entered nunc pro tunc as of July 31, 1934. On November 6th the stay of execution was further extended until November 30th, and motion for extension of time to file bill of exceptions was continued until November 30th. On November 30, 1934, the court denied appellant's second motion for new trial and fixed the appeal bond at $15,000. On December 1st the court entered an order extending the time for filing bill of exceptions to December 22d. On December 20th Mack, Wikoff & Ross, and Orville R. Seiter moved for leave to enter their appearance as additional counsel for appellant. Said motion was allowed. Counsel thereupon moved to extend further the time for filing bill of exceptions. This motion was denied. Defendant then moved for an order granting an appeal. This the court denied, obviously because a prior appeal had been perfected. The affidavit of Seiter recited that he was one of the attorneys for defendant at the time of the trial and participated therein; that appellant had been taken to the penitentiary upon commitment; that, because of the voluminous character of the record, additional time was required within which to file a bill of exceptions. Apparently, the court had in mind that the judgment of conviction had been entered in July, that the time expiring since that date was then ripening into 6 months and that further delay was not necessary, and that, had diligence been observed by appellant, he would not have needed to make the request.

On February 2, 1935, at a term succeeding that at which the last of the orders heretofore mentioned was entered, defendant obtained an extension of time for filing bill of exceptions. Thereafter upon motion this court dismissed the appeal, Tinkoff v. United States, 77 F.(2d) 1016, holding that, there being no bill of exceptions on file, there was nothing to review.

Later, the court, at the earnest solicitation of the appellant, vacated the order of dismissal and reinstated the appeal, and the government now contends that a bill of exceptions since prepared and filed is not properly a part of the record; that the

trial court was without jurisdiction to approve any bill of exception subsequent to the December term, 1934; that, upon the perfecting of the appeal, the trial court lost jurisdiction of the cause entirely except for the purpose of entering within that term such orders as were necessary for the filing of bills of exception; and that, the only motion made at the December term, 1934, for extending of time to file bill of exceptions having been denied, the orders of the District Court at subsequent terms are a nullity.

Let us examine first the question of whether appellant was diligent in presenting his second motion for new trial. After his original motion for new trial had been denied on July 30th, one month later, he made an oral motion based on alleged newly discovered evidence. Appellant admits that the newly discovered testimony relied upon came to his attention on July 31st, and it appears in the affidavit of his wife, filed in support of the motion, that on July 31st she obtained the information relied upon as constituting newly discovered evidence. Despite this knowledge in July, the facts were not sworn to until November 28th, almost 4 months later, or filed with the court, until November 30th. Appellant says that the trial judge was out of the district a large portion of this period, but that fact does not excuse his delay in bringing to the attention of the District Court the facts relied upon as constituting newly discovered evidence brought to his attention in July and not presented to the court until 4 months later. Only one conclusion can be drawn, and that is that defendant was courting delay in disposition of his second motion for new trial. Diligence is the all-important factor justifying extension of grace by the court. Knowlton v. Seneca Engineering Co. (D.C.) 36 F.(2d) 394. In Moss v. Equitable Life Insurance Co. of Iowa, 71 F.(2d) 795, 796 (C.C.A.8), the court properly said: "While it is well settled that a motion for a new trial in a law case, made with reasonable promptness after the entry of judgment, will toll the beginning of the statutory time within which an appeal can be taken, the benefits of this rule should not be extended to those who fail to act with reasonable diligence."

So here appellant, seeking relief, may not have extended to him the benefit of that to which he might have been entitled had he acted with reasonable diligence.

When the defendant's motion for new trial was overruled on July 30th, if, on the following day, he became aware of what he considered vital newly discovered evidence, he owed a duty to present the same to the court with diligence. Failing to do so, he must be held to have abandoned the same. Consequently the rightfully final order from which an appeal could be taken was that of July 31, 1934.

Irrespective of this conclusion, however, we are confronted with a further and even more serious situation. Judgment of conviction was entered on July 30th. On October 27th appellant prayed an appeal but procured an order of the court fixing nunc pro tunc the time of prayer for and allowance of appeal as July 31, 1934. Whether we accept the earlier date of July 31st or the later one of October 27th is not of vital importance in this connection.

The effect of perfecting an appeal is to remove jurisdiction of the cause from the trial court. That tribunal has no power thereafter to enter any order with respect to the case other than such as has to do with bills of exception or preparation of the record. It has no jurisdiction after an appeal has been granted to act upon a motion for new trial, to reduce sentence, or otherwise modify or invalidate the judgment appealed from. It may at the same term properly vacate the order allowing the appeal, but, in the absence of such order of vacation, jurisdiction to deal with the judgment passes from the District Court to the Court of Appeals. The lodgment of a writ of error, the filing of notice of appeal, and the order allowing the appeal, all remove jurisdiction to the upper court. United States v. Habib et al. (C.C.A.) 72 F.(2d) 271; Levinson v. United States (C.C.A.) 32 F.(2d) 449; United States v. Radice (C.C.A.) 40 F.(2d) 445; United States v. Mayer, 235 U.S. 55, 35 S.Ct. 16, 59 L.Ed. 129; Rogers v. Watson (C.C.A.) 46 F.(2d) 753; Mayer v. Hickey (C.C.A.) 67 F.(2d) 489; Midland Terminal R. Co. v. Warinner, 294 F. 185 (C.C.A.8); Spirou v. United States, 24 F.(2d) 796 (C.C.A.2). It follows that, after the entry of the order allowing the appeal, the District Court had no jurisdiction to pass upon any motion to vacate the judgment or for new trial and that any order entered thereafter in that respect is a complete nullity.

 The District Court, however, may enter at the same term appropriate orders for the filing of bills of exception. From the history recited, it is apparent that several extensions for filing bills of exception were granted, the last expiring on December 22d, well nigh 6 months after the appeal had first been noted. Obviously the District Court was justified in believing that diligence had not been observed, and therefore on December 7th entered an order denying any further extension. No bill of exceptions properly could be approved by the District Court except one filed within the limit of December 22d or within such time as 'might be extended by any further order entered at that term. No such order was entered and the term expired in January, 1935. After its expiration, at the ensuing February term, 1935, the District Court again entered an order fixing the time for filing bill of exceptions. This order we consider an entire nullity, in view of the fact that the term at which the court might have fixed a time had expired. Such was the view of this court when it dismissed the appeal. Consequently the bill of exceptions presented subsequent to December 22, 1934, is a nullity.

 Appellant contends, however, that the motion submitted on December 7th, by counsel who then entered their appearance for him, was not presented with his authority; that he was then confined in the penitentiary; that, in view of his imprisonment, the time for filing his bill of exceptions was thereby automatically extended; and that the effect of the order of December 7th was to deny him his legal rights. It appears, however, that counsel who entered their appearance for appellant filed an affidavit in which it was stated that one of them had appeared in the trial as associate counsel for appellant. The record discloses such counsel's participation at the trial. The attorneys were officers of the court, and there is nothing in the record to disclose any limitation upon the authority of appellant's attorneys other than his own affidavit that he did not authorize this representation. We find as a fact that counsel had authority to represent appellant in making the motion for extension of time for bill of exceptions, which was denied. Appellant says that, had he been present, he could have presented the matter himself. Probably true, but all the facts that he relied upon as mate-

rial—his confinement, the voluminous character of the record, the difficulty of assembling the same,—were presented to the court, who was properly justified, as we have seen, in refusing further extension of time for the preparation of bill of exceptions as to a judgment, then almost 6 months old, beyond the date of December 22d. The court's discretion was wisely exercised. Defendant was not handicapped or injured. To have acted otherwise, it seems to us, would have been an abuse of discretion in favor of the appellant, encouraging dilatory tactics at the expense of diligence. We conclude, therefore, that the bill of exceptions now on file is one which we are powerless to receive and to consider.

However, in view of the circumstances of this case and the earnest plea of appellant, we are not satisfied to ground our decision upon the defendant's lack of diligence, his failure to comply with the law in perfecting his appeal, or his long delay in taking any steps to protect his rights, all indicative clearly of a desire to delay the process and the functions of the court. Rather we have preferred to study the record and to consider the cause upon its merits as if there were a valid bill of exceptions on file.

 Appellant contends that the demurrer to his indictment was improperly overruled. The first count charged that appellant was employed by one Newman and by Newman corporations to aid, counsel, advise, and assist the taxpayers in the preparation and presentation of their income tax returns and that appellant, jointly with Newman, willfully attempted to defeat and evade a large portion of the tax, $130,767.96, representing the consolidated net income for 1928 of two Newman corporations, by preparing and filing a tax return of only $11,895.22. The second count charges a similar attempt to defeat and evade an income tax of $87,706.87 for Newman, individually, for the year 1928, by preparing and filing a return showing no tax due and payable. Each count is based upon section 146 (b) of the Revenue Act of 1928 (26 U.S.C.A. § 145 and note), which provides, in part, that any person who willfully attempts in any manner to evade or defeat any tax shall be guilty of a felony. Each count follows the language of the statute in a form which has been sustained by the courts. United States v. Troy, 293 U.S. 58, 55 S.Ct. 23,.

79 L.Ed. 197, Capone v. United States, 56 F.(2d) 927 (C.C.A.7), certiorari denied 286 U.S. 553, 52 S.Ct. 503, 76 L.Ed. 1288; Emmich v. United States, 298 F. 5 (C.C.A.6), certiorari denied 266 U.S. 608, 45 S.Ct. 93, 69 L.Ed. 465; Gleckman v. United States, 80 F.(2d) 394 (C.C.A.8), certiorari denied February 10, 1936, 297 U.S. 709, 56 S.Ct. 501, 80 L.Ed. 996.

■ Section 1114 (c) of the Revenue Act of 1926 (44 Stat. 116, 26 U.S.C.A. § 1693 (b) (1), makes it a criminal offense willfully to aid or assist in the presentation of a false income tax return, and appellant insists that a conviction on the present charge under section 146 (b) is no bar to a further prosecution on section 1114 (c) of the Revenue Act of 1926. Appellant and Newman were jointly charged as principals with attempting to evade the corporation tax and the individual tax of Newman. The counts charged that appellant was employed to prepare and make such returns. He.was under no duty to make a return as an officer or otherwise, but contracted with Newman to handle these tax matters. Had the charge against him been a failure to make a return or to pay the tax, it might have been reasonably necessary to allege and show a duty in that respect upon his part, but, when he is charged with willful effort to defeat the tax by presenting a false return, no allegation of duty upon the part of appellant is necessary. As the Supreme Court remarks, there is evidently no legislative purpose to exempt from punishment one who actively endeavors to defeat a tax, whatever his relationship to the taxp٦yer may be. United States v. Troy, supra; Levy v. United States, 271 F. 942 (C.C.A.3).

■ Nor is it any defect that the tax attempted to be evaded was that of another. The statute is so framed as to make liable any person who attempts willfully and unlawfully to evade the tax of himself or of any other person. Capone v. United States, 51 F.(2d) 609, 76 A.L.R. 1534 (C.C.A.7), certiorari denied 284 U.S. 669, 52 S.Ct. 44, 76 L.Ed. 566; United States v. Smith (D.C.) 13 F.(2d) 923; United States v. Miro, 60 F.(2d) 58 (C.C.A.2). Appellant may not have been an ordinary employee of the corporation. He probably was an independent contractor, but no exemption because of such latter relationship is extended by the act to one who attempts to evade or defeat a tax. United States v. Troy, supra.

■ Whether appellant might have been charged also under section 1114 (c) of the Revenue Act of 1926 is wholly immaterial. There is presented at this time no question of double punishment.

■ Appellant contends that the trial court erred in denying his motion for bill of particulars. Each count of the indictment went into unusually great detail in setting up facts, figures, amounts, dates, and transactions. It set forth clearly the alleged 'character of the evasions and the method and means by which the same were effectuated. Each count fully and sufficiently informed appellant of the charges against him; there was no abuse of the District Court's discretion in denying a bill of particulars. Paschen v. United States, 70 F.(2d) 491 (C.C.A.7); Price v. United States, 68 F.(2d) 133 (C.C.A.5), certiorari denied 292 U.S. 632, 54 S.Ct. 640, 78 L.Ed. 1486; United States v. Wexler (D.C.) 6 F.Supp. 258.

■ Appellant moved for an election of counts upon which the government would prosecute. All other counts were dismissed. The two counts here involved are similar in that they charge attempts to defeat income taxes, the first, those of the Newman corporations, and the second, those of Newman himself, for the same year. The record shows that the subject matter of each count was closely related to that of the other; that a large part of the evidence in support of each count was the same; that election would have served no good purpose so far as appellant is concerned, but would have involved him in two prolonged trials instead of one. The evidence discloses voluminous acts, in transactions closely connected and interrelated, within the language of section 1024 of the Revised Statutes (18 U.S.C.A. § 557) which permits trial of certain charges together. The offenses charged were of the same class and the defendants subjected to the same punishment. They involved closely related subject matter. The act is directly applicable. Pointer v. United States, 151 U.S. 396, 14 S.Ct. 410, 38 L.Ed. 208; Bedell v. United States, 78 F.(2d) 358 (C.C.A.8), certiorari denied 296 U.S. 628, 56 S.Ct. 151, 80 L.Ed. 447.

■ Appellant contends that the motion for a continuance on May 29, 1934, was

wrongfully overruled. The indictment was returned on June 14, 1932. Demurrers to it were overruled and motion for bill of particulars was heard and disposed of. Motions to require the government to elect were disposed of and the case was set for trial on February 6, 1933, May 10, 11, 15 and 23, 1934, and again on May 29, 1934. Appellant claims that he was unable to procure counsel. Although the indictment had been returned and appellant apprehended almost 2 years before, these facts were not brought to the attention of the court until May 21, 1934. Coupled with other circumstances in the record, this long delay was clearly indicative of a desire to postpone the trial. The record discloses that counsel who had been associated with appellant for 3 months participated with other counsel at the trial and at the counsel table. More than that, however, the court appointed experienced counsel to defend appellant. Such counsel satisfactorily performed his duties. He cross-examined the witnesses at length in detail and obviously with a clear conception of the issues involved. He made a lawyerlike defense in every particular. Appellant contends that counsel did not observe all of his suggestions; did not at all times follow such procedure as he (appellant) advised; and did not at all times bring out all of the evidence appellant desired or make such cross-examination as appellant desired. We have scrutinized the record carefully to ascertain if there was any possible degree of prejudice to appellant in this respect. Appellant himself was permitted by the court to participate in cross-examination of witnesses, even though his counsel had cross-examined fully and at length in great detail. Appellant participated in making suggestions and objections. The court at no time refused appellant permission to cross-examine, to examine, or to participate fully in the trial, but rather transcended the ordinary rules limiting cross-examination to one counsel for a party. We are satisfied from a reading of the record that appellant's participation did not help his cause and that he would have fared fully as well if he had given his counsel a free hand. The cross-examination of the witness Nora Newman by appellant is a good example of what we have in mind. The record discloses a trial skillfully conducted by counsel, including appellant, himself a lawyer, thorough cross-examination, proper arguments to the court in support of appellant's position and at considerable length, patient consideration by the court, and an obvious attempt by the court to give to appellant every element of a fair trial. The record discloses no possible prejudice to appellant in this connection. Quite the contrary. Were there the slightest evidence of such, we might be tempted to overlook the fact that necessity for the order of appointment of counsel was not presented for 2 years; that the fault was that of appellant. Clearly the question was one of discretion and was not abused. O'Brien v. United States, 51 F.(2d) 193 (C.C.A.7); Reynolds v. United States, 67 F.(2d) 216 (C.C.A.9); Hardy v. United States, 186 U.S. 224, 22 S.Ct. 889, 46 L.Ed. 1137; Isaacs v. United States, 159 U.S. 487, 16 S.Ct. 51, 40 L. Ed. 229.

■ Appellant insists that the prosecution was barred by the statute of limitations. The indictment was returned June 14, 1932, charging offenses on June 15, 1929, and September 16, 1929, less than 3 years from the date of its return. Furthermore, the 3-year period was extended on June 6, 1932, by section 1108 (a) of the Revenue Act of 1932. United States v. Clayton-Kennedy (D.C.) 2 F.Supp. 233, appeal dismissed 67 F.(2d) 988 (C.C.A.4).

■ Appellant filed a plea of abatement to the effect that there was no competent evidence against appellant before the grand jury which returned the indictment. The evidence showed that books and records of the company were before the grand jury and that an internal revenue agent testified there. The evidence fails to show what other documents were considered, and there is complete failure to show that there was no competent evidence before the jury. The court cannot inquire into the sufficiency of the evidence actually presented. Holt v. United States, 218 U. S. 245, 31 S.Ct. 2, 54 L.Ed. 1021, 20 Ann. Cas. 1138; Cox v. Vaught, 52 F.(2d) 562 (C.C.A.10); Kastel v. United States, 23 F.(2d) 156 (C.C.A.2).

■ Appellant contends that error was committed in the cross-examination of himself. He testified that he was admitted to practice in 1923 before the Treasury Department and that he had continued in this specialized practice "up to the present time." Government's counsel then inquired of him if it was not true that he had not practiced before the Treasury Department all of the time to the date of the trial. Appellant answered that he had not; "that

a question of suspension arose." The government inquired as to the date of suspension and he replied that it was effective June 11, 1930. It would seem elementary that the cross-examination was within the purview of the direct examination, the witness having testified that he had practiced continuously before the Treasury Department, a fact which was material only to help acquaint the jury with the history of his professional life. He laid down the bars for a cross-examination bringing out the fact that he had been suspended. New York Alaska Gold Dredging Co. v. Walbridge, 76 F.(2d) 655 (C.C.A.9).

■ Closely related is the question of whether it was error to permit to be brought out in cross-examination the fact that, in connection with his suspension of practice before the Department, appellant had, without authority, raised the amount of a tax abatement bond from $480 to $524. He admitted that he had made the alteration, but insisted that he did so at the request of the internal revenue collector. There was no objection to the question, no motion to strike the testimony, and no exception preserved. Clearly, this is not reversible error. Paschen v. United States, 70 F.(2d) 491 (C.C.A.7); Fillippon v. Albion Vein Slate Co., 250 U.S. 76, 39 S.Ct. 435, 63 L.Ed. 853. Furthermore, appellant, having put in evidence the nature of his practice, its extent and duration, subjected himself to cross-examination upon such details arising therefrom as might affect what he intended to accomplish by his direct testimony.

■ Appellant urges further that Government's Exhibits N1–N8 inclusive, N100–N101, inclusive, and appellant's bill book were wrongfully taken to the jury room, intentionally or unintentionally. The record shows clearly that Exhibits N1–N8 were offered in evidence and were received, the court saying that all exhibits previously offered and not excluded were received in evidence. Government's Exhibits N100–N101 were identified and referred to by witnesses who testified. They were books of account and records produced for the purpose of verification of items used by auditors who testified and were made available to both sides for examination by such expert witnesses. They contain only facts that otherwise appeared in evidence. It is wholly immaterial whether they were offered or received or taken to the jury room. Burton v. Driggs,

20 Wall. 125, 136, 22 L.Ed. 299; Stephens v. United States, 41 F.(2d) 440 (C.C.A.9); United States v. Miller, 61 F.(2d) 947 (C.C.A.2).

■ The bill book contained carbon copies of numerous bills of appellant to clients, including Newman, some 664 in number. One of the jurors made an affidavit that the book was included in the exhibits taken to the jury room, but the evidence offered in this respect contains no showing that the book was examined or considered in any way by any member of the jury or in any way influenced their verdict. It and its contents were wholly irrelevant and immaterial to the issues. Affidavits of three witnesses were submitted by the government, including counsel who tried the case. They show that each party kept its own exhibits upon its own counsel table until the trial was ended, whereupon all the exhibits were placed upon a truck and taken into the jury room by the bailiff; that the government's representatives did not place this book upon the truck; that appellant was observed in the proximity of the truck and was required to state his purpose in being where he was; that the members of the jury did not examine the book; that it did not affect their deliberation or decision; that it was not considered by them; and that the book could have been placed on the truck only by appellant or his assistants. It was a personal record of appellant and not used by the government in any manner; it came from appellant's possession; and, if any prejudicial error resulted, possibility of which we cannot see, it must have arisen by reason of appellant's actions. Paschen v. United States, supra; Motes v. United States, 178 U.S. 458, 20 S.Ct. 993, 44 L.Ed. 1150; Chadick v. United States, 77 F.(2d) 961 (C.C.A.5), certiorari denied October 14, 1935, 296 U.S. 609, 56 S.Ct. 126, 80 L.Ed. 432.

■ Attack is made upon the correctness of the amount charged in the indictment to have been evaded as a tax. Obviously it is not necessary that the government prove an evasion of all the tax charged. It is sufficient if any substantial portion of a tax was defeated and evaded. O'Brien v. United States, 51 F.(2d) 193 (C.C.A.7), certiorari denied 284 U.S. 673, 52 S.Ct. 129, 76 L.Ed. 569; Gleckman v. United States, 80 F.(2d) 394 (C.C.A.8), certiorari denied Feb. 10, 1936, 297 U.S. 709, 56 S.Ct. 501, 80 L.Ed. 996; United

States v. Miro, 60 F.(2d) 58 (C.C.A.2). The first count of the indictment charged willful attempts to defeat and evade $130,-767.96 out of an income tax of $142,663.88. There was substantial evidence before the jury that the income tax due from the corporation for 1928 was $108,267.55 instead of $142,663.88, leaving a deficiency in tax paid of $96,371.63. The second count charged an evasion of $87,706.87 due from Newman. The evidence of the government tended to show that the tax due from Newman amounted to $101,609.75, instead of nothing as reported. There was substantial proof in this respect, sufficient to support the averments of the indictment. Willful intent is an intangible thing and direct proof of such is not necessary. Rather the question of willfulness is one of fact for the jury to be determined from all the circumstances. Capone v. United States, supra; United States v. Commerford, 64 F.(2d) 28, 30 (C.C.A.2), certiorari denied 289 U.S. 759, 53 S.Ct. 792, 77 L.Ed. 1502. There being substantial evidence in the record to support the conclusion that there was a willful attempt to evade, this court must abide by the finding of the jury. Paschen v. United States, supra; Burton v. United States, 202 U.S. 344, 26 S.Ct. 688, 50 L.Ed. 1057, 6 Ann. Cas. 362; Segurola v. United States, 275 U.S. 106, 48 S.Ct. 77, 72 L.Ed. 186.

■ Appellant's motion to keep the jury together during the course of the trial was denied. There is no showing of any abuse of discretion and no error is suggested by the record. Liverpool & L. & G. Ins. Co. v. N. & M. Friedman Co., 133 F. 713 (C. C.A.6); Walton v. Wild Goose Mining & Trading Co., 123 F. 209 (C.C.A.9), certiorari denied 194 U.S. 631, 24 S.Ct. 856, 48 L.Ed. 1158.

Appellant insists that the jury read the daily newspapers containing articles prejudicial to him. The affidavits presented in this respect show that the publications were merely matter-of-fact news items, reporting only the transactions which appeared before the jury. There is no evidence that any juror was influenced in the slightest respect. Paschen v. United States, supra.

■ It is discretionary upon the part of the trial court to refuse to exclude the witnesses and no abuse of such discretion is apparent. Noone v. Olehy, 297 Ill. 160, 130 N.E. 476.

■ Appellant insists the court wrongfully admitted certain documentary evidence relating to a transaction of the same character in 1927. This evidence included checks, contracts, and other documents bearing upon withdrawal of income by Newman for the year 1927 by appellant and Newman, one as principal and the other as his tax specialist. They were admissible for their bearing upon the question of motive and intent in the plan followed in 1928 as well as in prior years. Allis v. United States, 155 U.S. 117, 15 S.Ct. 36, 39 L.Ed. 91; Chadick v. United States, supra; Emmich v. United States, supra; Wood v. United States, 16 Pet. 342, 10 L.Ed. 987. Furthermore, they were admissible because of their relationship to the occurrences with reference to 1928.

■■ Appellant complains of the admission of a letter written by him to Newman on February 25, 1924, advising the latter that he was being unjustly burdened with excessive taxation and soliciting his business. We are not prepared to say that this exhibit did not have some bearing upon the question of appellant's good faith in supervising Newman's tax affairs and thus make the admission erroneous. It was evidence of appellant's method in soliciting business and procuring Newman's tax business and the relationship between the two. Similar in character is the letter written after one grand jury had failed to indict, in which appellant expressed his delight over the failure of the grand jury to act. We deem these letters immaterial, but they in no way prejudiced the appellant.

■ There are assignments of error as to the admission of certain testimony by Newman. It may be true that what Newman did is not binding upon appellant, but the jury was well advised as to the separate responsibility of each, and the testimony was proper to explain the manner in which the business was transacted and to show the relationship of the parties. Newman testified also as to actions begun against him by appellant and then dismissed. We do not consider the evidence of any relevance and materiality, but it certainly carried no prejudice to appellant.

We find no error in the hypothetical questions put to certain witnesses upon the question of the amount of tax. The assumptions were fairly based upon the evi-

dence, and the questions were proper and did not invade the province of the jury. Guzik v. United States, 54 F.(2d) 618 (C. C.A.7), certiorari denied 285 U.S. 545, 52 S.Ct. 395, 76 L.Ed. 937; Gleckman v. United States, supra.

■ Appellant insists that there was complete failure of proof that he had knowledge of the transactions involved. The record contains substantial evidence to show that appellant had direct information of all financial transactions giving rise to the income, and there was evidence also that certain facts were omitted from the returns because of falsification of records examined by him and his employees. True, it was necessary that there be connection of defendant with the transactions; but there was substantial evidence in this respect. The jury was carefully instructed that there could be no criminal liability upon the part of appellant for negligence, or for anything of which he did not have actual knowledge; that appellant was not responsible for what his employees knew unless such knowledge was actually brought home to him; and that the indictment required proof of actual knowledge and willfulness upon his part.

■ Appellant complains of certain allegedly wrongful refused charges to the jury. One of his objections is that the court should have charged specifically that appellant must have been under duty to make out the return—that he must have been an employee. The trial court had called the jury's attention to the law in this respect. Any further charge was unnecessary.

We have examined the charge. It is full and complete in every respect. The court was careful to explain the degree of proof required, the presumption of innocence, and all rights of appellant. It gave full and complete instruction upon the nature of the offense included in the indictment, the proof necessary to sustain the same and the law governing, and included everything requested by appellant, except requests which were not well founded. All properly requested instructions refused are fully covered here by the general charges. Coffin v. United States, 162 U.S. 664, 16 S.Ct. 943, 40 L.Ed. 1109; Sandy White v. United States, 164 U.S. 100, 17 S.Ct. 38, 41 L.Ed. 365.

We have examined all assignments of error and have given full consideration to appellant's contentions with respect thereto. We find no error in any respect, and are compelled to affirm the judgment and remit appellant to the custody of the Attorney General for completion of his sentence, giving him credit for that portion thereof heretofore served.

This credit for that part of the sentence heretofore served requires some explanation. If the defendant's previous imprisonment was illegal, though, without so deciding, we are inclined otherwise, it might be urged that he would be entitled to no credit for the time served. Thus it has been held that, if a commitment is void, the prisoner's incarceration thereunder is technically illegal, at least until valid order can be entered. 16 C.J. 1329, citing Ross v. State, 8 Wyo. 351, 57 P. 924. The authorities are far from unanimous accord. See 16 C.J. 1315 and 1373; Jackson v. Com., 187 Ky. 760, 220 S.W. 1045, 9 A.L.R. 958; Kozlowski v. Board of Trustees, etc. (1921) 2 W. W. Harr.(32 Del.) 29, 118 A. 596; State v. Fairchild (1925) 136 Wash. 132, 238 P. 922; Owen v. Commonwealth (1926) 214 Ky. 394, 283 S.W. 400; Ex parte Perse (1926) 220 Mo. App. 406, 286 S.W. 733; In re Wilson (1927) 202 Cal. 341, 260 P. 542; Hofstetter v. Hollowell (Iowa 1927) 214 N.W. 698; Ex parte Phair (1934) 2 Cal.App.(2d) 669, 38 P.(2d) 826; Minto v. State (1913) 9 Ala.App. 95, 64 So. 369; In re Silva, 38 Cal.App. 98, 175 P. 481. If, however, his confinement was legal, there is no doubt that he must be credited with the time served. In view of our conclusion as to the latter issue, we shall not pass upon the former.

At the time the judgment was entered, rule 5 of Rules of Practice and Procedure in Criminal Cases, as promulgated by the Supreme Court in 1934, 292 U.S. 661 (28 U.S.C.A. following section 723a), had not yet become effective. Hence, in determining the question of legality of the imprisonment thus far, we must look to the law as it existed prior to such pronouncement.

The pertinent statutes are 28 U.S.C.A. §§ 869 and 874. Section 869 is as follows: "Every justice or judge signing a citation on any writ of error, shall, except in cases brought up by the United States or by direction of any department of the Government, take good and sufficient security that the plaintiff in error or the appellant shall prosecute his writ or ap-

peal to effect, and, if he fails to make his plea good, shall answer all damages and costs, where the writ is a supersedeas and stays execution, or all costs only where it is not a supersedeas as aforesaid."

Section 874 reads as follows: "In any case where a writ of error may be a supersedeas, the defendant may obtain such supersedeas by serving the writ of error, by lodging a copy thereof for the adverse party in the clerk's office where the record remains, within sixty days, Sundays exclusive, after the rendering of the judgment complained of, and giving the security required by law on the issuing of the citation. But if he desires to stay process on the judgment, he may, having served his writ of error as aforesaid, give the security required by law within sixty days after the rendition of such judgment, or afterward with the permission of a justice or judge of the appellate court. And in such cases where a writ of error may be a supersedeas, executions shall not issue until the expiration of ten days."

Until the promulgation of the present applicable rules, these statutes governed procedure in criminal cases. In re Claasen, 140 U.S. 200, 11 S.Ct. 735, 738, 35 L.Ed. 409; Hudson v. Parker, 156 U.S. 277, 15 S.Ct. 450, 39 L.Ed. 424; Kitchen v. Randolph, 93 U.S. 86, 23 L.Ed. 810.

As there is no constitutional right to an appeal in criminal cases, the court may, within its statutory powers, affix such conditions thereto as seem fit. United States v. St. Clair (C.C.A.) 42 F.(2d) 26.

By section 861a, title 28 U.S.C.A., writ of error was abolished and the relief obtainable thereby made procurable by appeal. By section 861b of the same title, however, Congress confined the relief under appeal to such as was formerly allowed under writ of error, and prescribed that the mode of exercising and invoking such relief, including costs, supersedeas, and mandate, provided for on writs of error, should apply to an appeal.

The immediate question is whether appellant, by perfecting his appeal on October 27, 1934, thereby automatically became entitled to a supersedeas. We are not to confuse this with admission to bail, for the latter is not obtained by supersedeas, but requires other security. Bennett v. United States (C.C.A.) 36 F.(2d) 475; United States v. Motlow (C.C.A.) 10 F.(2d) 657, per Butler, Seventh Circuit.

Appellant was directed to give security for his appearance upon appeal by December 6th; on December 7th, failing to secure bond, he surrendered and was taken to the penitentiary upon warrant of commitment. At no time did the trial court or any judge of the Court of Appeals direct that the order allowing appeal should operate as a supersedeas; at no time did appellant attempt to procure such direction. The language of the Supreme Court in In re Claasen, supra, is directly in point. There it was said: "Section * * * provides for the manner in which a supersedeas may be obtained on a writ of error. It is by serving the writ of error, by lodging a copy thereof for the adverse party in the clerk's office where the record remains, within 60 days, Sundays exclusive, after the rendering of the judgment complained of, and giving the security required by law on the issuing of the citation. But, as there is no security required in a criminal case, the supersedeas may be obtained by merely serving the writ within the time prescribed without giving any security, *provided the justice who signs the citation directs that the writ shall operate as a supersedeas, which he may do when no security is required or taken.*" (The italics are those of this court.)

Thus it will be observed that the Supreme Court has said that a supersedeas in criminal cases may be obtained by merely serving the writ within the time prescribed, without giving security, provided, however, that the judge who signs the citation shall direct that the writ shall operate as a supersedeas. To the same effect is Hudson v. Parker, 156 U.S. 277, 15 S.Ct. 450, 456, 39 L.Ed. 424, wherein it was held that a justice of the Supreme Court may grant a supersedeas when the writ does not of itself operate as a stay, as it does when filed and security is given within 60 days after the judgment complained of. The authority is permissive. The justice may grant the supersedeas, but he is not compelled to do so. In Solomon v. United States, 297 F. 95, 96, 97 (C.C.A.1), the court pointed out that, if a defendant should desire to stay process upon the judgment, he might serve his writ within the statutory period and give the security required by law within 60 days after the rendition of the judgment or thereafter, by permission of the judge or justice of the appellate court. It was said in the

latter case, "a stay is a matter of favor," and in McKnight v. United States, 113 F. 451 (C.C.A.6), the court held that the writ will operate as a supersedeas provided, however, that the judge signing the citation shall so direct.

In Mackin v. United States (C.C.) 23 F. 334, Judge Gresham said that it is within the discretion of the trial judge whether he will stay the sentence. To the same effect are United States v. Gibson (D.C.) 188 F. 396; United States v. McDonald (D.C.) 293 F. 433. In Cyclopedia of Federal Procedure, vol. 5, § 2507, the author, after reviewing the authorities, says that the allowance of a supersedeas under such facts as exist here rests in the discretion of the court.

In In re Claasen, supra, the court announced that in a criminal case supersedeas may be obtained by procuring direction by the judge who signs the citation that the writ shall operate as a supersedeas. The court remarked that there had previously been no applicable rule promulgated by the court, and at that time adopted rule 36 (28 U.S.C.A. following section 354 [rule 33 note]) specifically so providing. In Hudson v. Parker, supra, commenting on rule 36, the court said that it in effect provided that: "An appeal or a writ of error from a circuit court or a district court direct to this court, in the cases provided for in sections 5 and 6 of the act [of 1891] * * * may be allowed, in term time or in vacation, by any justice of this court, or by any circuit judge within his circuit, or by any district judge within his district, and the proper security be taken and the citation signed by him, and *he may also grant a supersedeas and stay of execution* or of proceedings, pending such writ of error or appeal." (Italics ours)

█ This rule was carried in substance through the subsequent promulgations of rules by the Supreme Court, appearing as rule 33 in the revision of 1925, 266 U.S. 678, rule 36 in the revision of 1928, appearing in 275 U.S. 620, and as rule 36 in revision of 1931, appearing in 286 U.S. 621 (28 U.S.C.A. following section 354). Consequently, it would seem to be well-established law that, until the adoption of the rules of 1934, a supersedeas in a criminal case was discretionary with the District Judge and with the justices or judges of the courts of review, and that, until same should be procured by an order directing that the writ be made a supersedeas, there was no stay of proceedings.

Rose in his work on Federal Jurisdiction and Procedure (2d Ed.) rather well states the rule as follows: "A judge or justice of the appellate tribunal may at his discretion allow a supersedeas even after sixty days, but only in the event that the writ of error has been issued within that time; that is to say, if the party aggrieved wishes to prevent his adversary from executing, he must sue out his writ of error and have his supersedeas bond allowed within ten days. If he wishes to be in a position to ask for a supersedeas at all he must obtain his writ of error within sixty days. If he does, he has the right within sixty days to supersede the judgment or decree. If he allows the sixty days to elapse, he may even then be allowed to supersede if, in the discretion of a judge of the appellate court, it is proper that he should, but if he has not sued out his writ of error within the sixty days he cannot in any way obtain a supersedeas"—citing Kitchen v. Randolph, 93 U.S. 86, 23 L.Ed. 810.

We conclude, therefore, that at the time the judgment was entered it was the law that a defendant in a criminal case was entitled to have a writ of error (or, under the later statute, to appeal) as a matter of right; that such writ or appeal did not work a supersedeas unless the trial judge or justice of the court of review should so direct. Here there was no application for supersedeas. There was no order entered creating same, and appellant was properly, therefore, committed to the marshal for execution of the sentence. The imprisonment was in accordance with the law.

This conclusion is inevitable, wholly aside from any consideration of the further question of whether the trial court or a judge of the Court of Appeals had any right to make the appeal a supersedeas, in view of the fact that the appeal was not prayed within the time fixed by statute as the period within which it must be applied for, if a supersedeas is to be secured.

█ Sixty days having expired before the appeal was prayed, neither a justice of the Supreme Court nor a judge of the Court of Appeals had the power to allow

a supersedeas. Robinson v. Furber (C.C.) 189 F. 918. The service of a writ of error, or the perfection of an appeal, within sixty days, is an indispensable prerequisite to the allowance of a supersedeas, and it is not within the power of a judge or justice of an appellate court to grant a stay of process on the judgment, if this has not been complied with. Kitchen v. Randolph, 93 U.S. 86, 90, 23 L.Ed. 810; New England R. Co. v. Hyde (C.C.A.) 101 F. 397, certiorari denied (1901) 181 U.S. 619, 21 S. Ct. 924, 45 L.Ed. 1031. To supersede a judgment as a matter of right, a defendant must appeal within 60 days after the entry of the judgment and give the security required by law on issuing the citation. After the expiration of the 60 days, even though appeal has been prayed within that period, a supersedeas may be obtained only in the discretion of the judge. U. S. v. Shaffer (D.C.) 278 F. 549.

■ It appears that the nunc pro tunc order entered in October directing that the petition for appeal and the order allowing same be dated back as of July 31st are both a nullity, for, as the Supreme Court pointed out in Sage et al. v. Central R. Co., 93 U.S. 412, at page 418, 23 L.Ed. 933, a court cannot grant a supersedeas where a writ of error was not issued within 60 days, by ordering that the appeal shall relate back to a time within 60 days from the date of judgment. The court announced that, to make a nunc pro tunc order effective for such purposes, it must appear that the delay was the act of the court. Here there is no showing that there was any fault upon the part of the court in not allowing the appeal at an earlier date, but the record shows that the delay was wholly that of appellant. Consequently, the appeal must be taken as having been allowed 89 days after the judgment was entered and, though it was effective for the purposes of an appeal, it was not, under the then existing law, within sufficient time —that is, 60 days—to justify the court in granting a supersedeas, had it been requested.

The judgment is affirmed, with directions as above indicated.

### On Petition for Rehearing.

ALSCHULER, Circuit Judge.

In so far as the voluminous petition presents and discusses matters heretofore considered and decided by us, we see no reason for awarding rehearing of them. A few propositions are for the first time in the case brought to our attention by petitioner. Of such, the only one deemed worthy of our discussion is as to the competency of Judge LINDLEY to sit on hearing of the appeal.

His disqualification is asserted on the ground that he had previously in the district court heard a motion for a search warrant for the seizure of books and records of Newman and his companies, upon the allegation that the books and records were fraudulent, and were used as a means of committing a felony under section 1114 (b) of the Revenue Act of 1926, 44 Stat. 116, and section 146(b) of the Revenue Act of 1928, 26 U.S.C.A. § 145 and note, and that upon hearing such motion he had entered an order for the search warrant to issue.

■ It is contended that, having thus heard and acted upon the motion, he became disqualified to sit on the appeal herein, under the proviso of section 216, tit. 28, U.S.C. (28 U.S.C.A. § 216), which is: "Provided, That no judge before whom a cause or question may have been tried or heard in a district court, or existing circuit court, shall sit on the trial or hearing of such cause or question in the circuit court of appeals.

It appears from the record that the search warrant was directed against Newman and his companies, and it was seizure of their books and records which was thereby sought. It nowhere appears that the search warrant was directly or indirectly sought against appellant, or that at the time the order was entered (May 13, 1930), there was pending or contemplated any charge or proceeding whatsoever against him. Indeed, it does not from the record appear that appellant was in any manner connected with the case as a defendant, actual or prospective, until more than two years after the order for the warrant was entered, when the indictment against him was returned (June 14, 1932).

It is of no consequence here what the status of Newman or his companies would have been with reference to this question, if this were their appeal. Suffice it now to say that the motion for the search warrant did not involve any "cause or question" wherein the appellant had lawful con-

884

cern. The books and records were not his, and in hearing the motion for the search warrant the District Court did not pass on any question respecting appellant.

Neither did this appeal involve any question respecting the search warrant which would nearly or remotely invoke the application here of the quoted proviso.

■ Besides, in our judgment, the contention comes too late to avail appellant. In all these long drawn out proceedings there was no such proposition brought to the attention of the court, the petition for rehearing being the first challenge thereof.

■ If one of the appellate judges had in fact previously heard in the district court the "cause or question" involved on the appeal, this would not of itself have deprived the appellate court, of jurisdiction. An appellant well aware of his rights might waive the point, and proceed before such appellate court with the hearing of his appeal. There is here no contention that the appellant, himself a lawyer of experience and for years attorney for Newman and his companies, was not fully cognizant of the situation. In such circumstances it would be quite intolerable to permit him to withhold presentation of the point until after the hearing of the appeal and its decision against him. In Delaney v. U. S., 263 U. S. 586, 44 S.Ct. 206, 207, 68 L.Ed. 462, the court, referring to the same statutory proviso as applied to a similar situation, said: "The section seems not to have attracted the attention or appreciation of petitioner until he had experimented with other means of review and relief from the conviction adjudged against him. It may be that he did not thereby waive the section which may express a policy and solicitude in the law to keep its tribunals free from bias or prejudgment, rather than to afford a remedy to a litigant, yet it would seem that he should not be permitted to assume the competency of the tribunal to decide for him and its incompetency to decide against him. His action certainly suggests the idea that it was an afterthought with him that he was at any time in the situation from which the section was intended to relieve."

In State v. Coblentz, 169 Md. 159, 180 A. 266, 185 A. 350, the court, passing on a comparable issue, employed similar language.

Petition denied.