## UNITED STATES v. SKIDMORE.
### No. 7662.

Circuit Court of Appeals, Seventh Circuit.
Oct. 31, 1941.

Rehearing Denied Dec. 4, 1941.

Wm. Scott Stewart, of Chicago, Ill., for appellant.

J. Albert Woll, U. S. Atty., and Earle C. Hurley, Paul M. Plunkett, Lawrence J. Miller,a nd William J. Connor, Asst. U. S. Attys., all of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and MAJOR, Circuit Judges.

SPARKS, Circuit Judge.

Appellant was charged by two grand jury indictments with unlawfully, willfully and knowingly having attempted to defeat and evade portions of his income taxes in violation of section 145(b), Title 26 of the U.S. C.A. Int.Rev.Code. The first, returned on September 1, 1939, contained five counts, which dealt respectively with taxes for the calendar years 1933 to 1937, both inclusive; the second, returned February 29, 1940, dealt with taxes for the calendar year 1938.

To each of these indictments the defendant filed what he termed a verified plea in abatement, in which he merely sought to quash each indictment for the following reasons: As to the first indictment he alleged that it was returned on September 1, 1939, by an alleged grand jury which was impaneled and sworn in June, 1939; that no facts pleaded showed jurisdiction in the grand jury to return the indictment, or that the grand jury was legally selected or was continued by an order of the court authorizing the June grand jury of that year to sit in a succeeding term, and that there was no evidence heard by the grand jury at the June term, 1939, touching the matters referred to in the indictment. The alleged reasons for quashing the second were practically the same, but for the variation of the applicable dates. Appellant further alleged that it was not pleaded in the second indictment that it was returned by the regular panel of the December term, 1939, or by any other grand jury sitting at that term—it appearing of record in this court that during the December term, 1939, there was sitting, in addition to the regular grand jury of the December term, another or second grand jury which had been impaneled at that term, both of which were sitting and acting at one and the same time.

The District Attorney moved to strike each plea in abatement, or motion to quash, for the reasons that neither contained sufficient allegations of fact to support the motions, but on the other hand each contained mere conclusions of appellant with no supporting allegations of fact, and was merely an attempt to contradict the record in each case, and for the further reason that each plea failed to state the source of information upon which appellant's assertions were founded. The court sustained these motions and struck the pleas.

Each indictment discloses that the grand jury involved, on its own motion, was authorized to continue to sit during the term in question for the purpose of finishing investigations already begun. Each indictment alleges that the investigation was begun but not finished at the respective terms at which the juries were authorized to continue their investigation.

Under these conditions there was no error in the court's striking these motions to quash. Moreover, a motion to quash, like a demurrer, will not test the

truth of an allegation. Every allegation of appellant in these pleas merely constituted a denial of specific allegations in the indictments. Such an issue might well constitute a basis for a plea in abatement, and the court quite properly set these pleas for hearing on a future date. On that date no evidence was introduced, or offered, other than that we have already stated. Upon these facts it would have been error to sustain the motions to quash, and the court did not err in dismissing the pleas.

■ To each of these indictments appellant moved for a bill of particulars, which the court denied. In all material instances he called for calculations based upon appellant's books of account which were in his own possession. From these it would seem clear that he could easily calculate his receipts and expenditures and thus ascertain the true amount, if any, for which he was liable for taxation. If, on the other hand, the Government was in error as to its calculations, it would have been a simple matter for appellant to show those errors by the inspection of his own books. The general rule is that particulars such as these will not be furnished when the one seeking them is in possession of the means of ascertaining them. Moreover, in case of such motions the court is clothed with considerable discretion in making its orders. We think that discretion was not abused in this case.

On December 4, 1940, the two indictments were consolidated for trial on motion of the United States Attorney, and without objection of appellant; and at that time they were set for trial on February 20, 1941. On the last-named date, appellant gave notice that on February 24, at the opening of court, he would appear and move to quash the indictments and also challenge the array of petit jurors. On that date he appeared, and by leave of court withdrew his plea of not guilty. The court thereupon gave him leave to file instanter a motion to quash the indictment. That motion was argued and overruled by the court; thereupon appellant moved for a list of Government witnesses, which was denied, whereupon he moved for leave to inspect the minutes of the grand jury, which was also denied. He further moved to waive his trial by a jury. This was likewise denied, and he thereupon entered his motion to inspect the list of petit jurors, which was granted. He then upon arraignment pleaded not guilty and the trial proceeded.

In the motion to quash the two indictments appellant requested the court to consider it without prejudice to any of the motions heretofore made in the causes, "begging leave to demur, both general and special."

The reasons assigned in support of the motions to quash are many. One charges failure of jurisdiction of the grand jury and is said to be supported by the content of the so-called plea in abatement hereinbefore referred to, and by appellant's argument thereon. Others allege that no crime or offense is charged in either of the indictments, and others charge that the indictments are not clearly drawn and consist of conclusions instead of facts, or are uncertain by reason of the use of the videlicet, or are multifarious, or in one way or another are not sufficiently clear to inform the accused of the nature of the crime with which he is charged.

■■ It would serve no good purpose to lengthen this opinion by discussion of each of these items. A study of them convinces us that the grand jury had jurisdiction and that the crime was sufficiently charged to inform appellant of the offenses complained of. We think he was not deprived of the rights given to him by the sixth amendment of the Federal Constitution, nor are we convinced that the Act is unconstitutional because, as alleged, it fixes no standard of guilt.

■■ Appellant further contends that it is not clearly stated in the indictments whether he attempted to evade or defeat the tax, or just failed to pay it. He further urges that the nature of the charges and the consolidation of the cases for trial resulted in prejudice to him. We think there is no merit in these contentions. The general form of this indictment has been approved by this court many times. Capone v. United States, 7 Cir., 56 F.2d 927; Guzik v. United States, 7 Cir., 54 F.2d 618; and O'Brien v. United States, 7 Cir., 51 F.2d 193.

■ A further reason alleged for quashing the indictments was that the grand jury was not properly selected and sworn and the conduct of the inquiry was not in accordance with law. This specification is attempted to be supported by the affidavits of appellant and one Caplow. The main contention in this respect is that, in proportion to population, there were fewer jurors drawn from the city of Chicago and its environs than from other parts of the fed-

eral judicial district in which the case arose. It was stated in effect that it was manifestly unfair for the citizens of Chicago to be compelled to submit to trial before a jury predominated by citizens living outside the city, whose manner of living and moral concepts might be very different from those living within the city limits. Such suggestion does not merit serious consideration. There is not one scintilla of evidence in this case to support the charge that the grand jury or the petit jury was illegally or unfairly drawn, or that the inquiry was illegally or unfairly conducted, or that the appellant was thereby harmed. The court committed no error in overruling the motions to quash. See Ruthenberg v. United States, 245 U.S. 480, 38 S.Ct. 168, 62 L.Ed. 414; Seadlund v. United States, 7 Cir., 97 F.2d 742.

The jury found appellant guilty upon the second indictment and upon the fourth and fifth counts of the first indictment. It found him not guilty upon the first, second and third counts of the first indictment.

Appellant contends that there is no evidence to support any of the guilty verdicts. The evidence disclosed that he was engaged in the junk business for many years prior to the return of the indictments. As early as the year 1919 he stated that he had no money or assets. He never filed a tax return until the year 1933, and he gave for his reason for not having filed such returns that he had not made any money during that time. As a result of the examination then being conducted by the revenue agents, he made delinquent returns for the years 1929, 1930 and 1931. He then paid taxes and penalties of $9200 upon income for those years from the junk business and certain unidentified bank deposits. As proof of his statement to the examiners that he had received no other property, he voluntarily disclosed the contents of his safety deposit box to them, in which were found only private personal papers, and no assets other than evidence of title to real estate.

During the time covered by these indictments, appellant bought large amounts of valuable real estate and made extensive improvements upon them. The evidence further discloses that during these times he sold "protection" to those who desired to engage in the "handbook" business. Many witnesses testified that they went to his junk yard and personally handed him sums ranging from $50 to $200 in currency, and received permission from him to open handbook establishments. They thereafter paid him a sum, fixed by him, each month so long as they operated the handbook business. When calling at his office for that purpose, they found many men in line waiting to be admitted to his office. When admitted each remained but a very brief time and retired. When the witnesses were admitted they handed the money to appellant. He noted it on a paper and they retired. Appellant testified in the case and made no effort to explain what became of this money, because he denied receiving any of it. The aggregate amount of the money thus received was considerable, and appellant never returned any of it for taxation. This testimony of the bookmakers was evidently believed by the jury. It was purely a question of fact and we are bound by the finding on it. It was properly admitted in evidence, not for the purpose of showing that appellant was guilty of other crimes, but as tending to show that he actually received from that source vast sums of income with which he is charged in these indictments. If he did not retain for his own use all the money which he thus received he could have so informed the jury. However, he denied receiving any of it. He is therefore in no position to insist that the Government prove that he did not divide it with others.

The method by which the agents arrived at their conclusions with respect to his income for the years in question was as follows: They ascertained that his expenditures for those years were greatly in excess of his reported cash receipts, including borrowed money, and they charged him with failing to return for taxation the excess of such receipts over his expenditures. He insisted at all times that these excessive expenditures were taken from prior accumulated savings, but this statement was in direct conflict with his prior statements to which we have referred, and other of his statements to which we shall presently refer. Hence, there was raised a question of fact for the jury to determine. The calculation of the revenue agents for the years 1936, 1937 and 1938 showed an excess of expenditures over his reported income in the respective amounts of $33,095.49, $117,580.44, and $94,097.67. These figures do not include such items as living expenses for the appellant, which he estimated at $6500 a year, or the sum of $14,000 which he admitted having paid for a saddle horse, nor do they include the cash on hand which appellant had as of December 31, 1938, which amount he refused to state or even to estimate within $100,000, although he admitted having easily

$25,000. Furthermore, this calculation does not reflect the net income and tax paid for each of the years in question. It may be further said that this calculation also assumes that the defendant's cash position was nothing on January 31, 1933, which fact is supported by appellant's own evidence.

The Government's agents computed appellant's cash position as of January 1, 1929, to be $140,000. He had told them in 1936 that he was worth not less than $300,000 in 1928. At that same time he estimated his Chicago real estate at a present value of $172,000. The record discloses that this property was all bought prior to 1928, except one piece which was bought in 1936 for $13,000. Appellant had title to all of this property at the time of the trial and had never sold any of it. These figures are quite conclusive as to the Government's calculations as to his cash position on January 1, 1929. To this amount the Government added the total amount of his reported income following the date of January 1, 1929, until the end of the year 1938, which was $304,169.89. It was found appellant had available for expenditures during that time a total of $444,169.89. But during that time he spent $794,289.64, which exceeded his cash by $350,119.75. This, of course, was as the record shows, computed individually by years, and appellant was given credit for his cash on hand on January 1, 1929. It was assumed that the expenditures in excess of the reported income from 1934 to 1938 properly measured appellant's taxable income for the respective years in which the expenditures were made. It is not necessary to set forth these figures as the computation is not controverted, and appellant was given credit for all income reported by him in his returns in 1929 and 1931.

Another computation was made by the Government based on appellant's statement on June 23, 1936, that his estimated net worth then was $500,000, of which $250,000 was represented by former holdings. His cash position at that time, as he said, was $73,000, and the rest of his net worth was represented by real estate. Since these statements were made by appellant in June of 1936, which was in the middle of the taxable year, it was assumed, for the purpose of giving appellant the strongest cash position on December 31, 1936, that all the cash income shown on his income tax return for that year was that earned subsequent to the date of June 23, 1936, and that all repayments of loans and all farm expenses were incurred and paid prior to that date. This

computation discloses that appellant's cash position in December 31, 1936, was $100,-706.32. He reported income for that year at $64,586.69. However, he expended during that same year $184,167.13.

■ The same method was pursued by the Government in the calculation of unreported income as to each year involved in both indictments. However, we are not directly interested in the calculations for the years 1933, 1934 and 1935, because the jury found him not guilty of the charge with respect to those years. Appellant did not materially dispute the accuracy of the calculations. He merely insisted that the excessive expenditures for each of the years were made from accumulated earnings in previous years. This contention is so utterly inconsistent with the undisputed calculations and with appellant's own statements, that the jury had a right to disbelieve his contention, and he is in no position to complain. The evidence was sufficient to support the verdict.

■ Appellant further contends that the court erred in permitting the witness Clifford to answer certain questions which he insists invaded the province of the jury. This witness was an accountant of many years experience in the Internal Revenue service. In this respect he had qualified as an expert witness. In each question put to him he was asked to assume certain facts which were supported by evidence. For instance,—he was asked to assume that for the year 1933 appellant's expenditures exceeded his reported receipts by $66,164.74. He was then asked to assume that this amount was taxable income to appellant for that year. He was then asked to state upon those facts whether there would be a tax due the United States from appellant in excess of the amount shown on his income tax return for that year. Such questions were quite proper and the province of the jury was not thereby invaded. There was no error in permitting the questions to be answered.

■■ Appellant further urges that the court erred in permitting the witness Leake to testify that he had paid Skidmore $500 as protection money for his policy wheel in 1932. The objection was based on the fact that this was a year prior to the first year covered by the indictment. In this there was no error. It was not only proper to show willful intent but also to show that he had a source of income which he had concealed from the taxing officers. The courts

have many times held that willful intent is one of the essential elements in the proof of the crime of evasion of income taxes. Malone v. United States, 7 ·Cir., 94 F.2d 281.

 It is further contended by appellant that the court erred in restricting the cross-examination of the witnesses Blocker and Raber. It is clear from a reading of this testimony that the answer sought by the questions was not germane to the subject matter of the direct examination. The rulings were proper.

 Appellant further contends that the court erred in permitting him to be cross-examined relative to matters immaterial to the issue before the court. It is quite true that many of these questions might tend to reflect upon his character, at least by innuendo. We think that the answers sought are pertinent and are well within the realm of his previous admissions. By testifying he tendered his character and reputation as a direct issue, and the court is granted much latitude in this respect. We think its discretion was not abused. Raffel v. United States, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054.

 Appellant contends that the court erred in permitting the introduction of collateral issues and in further permitting the Government's counsel to comment on them in his argument and to draw unreasonable inferences therefrom, much to his detriment and prejudice. The testimony thus complained of was elicited by cross-examination. It bore directly upon the credibility of the witness thus testifying, including appellant. Indeed, much of it related to other crimes not described in the indictment, which were state crimes over which the federal court had no jurisdiction. However, they were matters which did affect the credibility of the witness, and they were quite properly admitted.

Appellant under this heading also complains that the court did not permit him to ask his witness Healey whether Government witness Drell had been arrested for gambling. This was for the purpose of impeaching Drell, who appellant insists had denied it. The court was clearly right in sustaining an objection to this question. It not only exceeded the limits of the cross-examination and was purely collateral, but if admitted, the answer would not have affected his character, because a mere arrest furnishes no presumption whatever of guilt.

 Under the heading of "collateral issues," appellant further contends that the court erred in permitting counsel to make reference to such collateral issues in his argument to the jury, and to make unwarranted inferences therefrom to the detriment and prejudice of the appellant. We have read the arguments of counsel, and we are convinced· that they are not fairly subject to this criticism. It is only fair to say that neither appellant nor his counsel raised any objection to the argument until long after the verdict was returned, when it was too late to reserve an exception.

Other objections to the admission and rejection of evidence are raised, but they are quite similar to those we have mentioned, and we think they do not merit discussion. The court did not err in any of these rulings.

In support of his contentions herein, appellant seems to rely quite heavily upon the opinion of this court in United States v. William R. Johnson et al., 123 F.2d 111, decided by this court September 15, 1941. It is only fair to say that the decisions in those cases are not in point here. There was not one controverted question in those cases which is present here, and this was admitted by counsel in argument before us.

 Appellant further contends that the court erred in the following instruction to the jury: "With respect to the years prior to 1929, it is presumed that the defendant has complied with the provisions of the Internal Revenue Laws and has filed a re-·turn and paid his income tax in such of those years when he had a net income subject to tax. Evidence that he did not file a tax return for any of these prior years may therefore be considered by you as an admission by him that he did not have a net income in excess of the amounts for which he would have been required by law to have filed a tax return." Appellant contends that this instruction constituted reversible error for the reason that he was not charged with any crime for the years prior to 1933. Of course this is true and the court so told the jury in the later instructions. When the instructions are read together it is found that there is no inconsistency in this respect. Moreover, it could not have prejudiced appellant in any way, for the verdict of guilty covered only the years of 1936, 1937 and 1938. Other objections to instructions are made but they are all of the same character, and when all instructions are read together there seems to be no basis for the objection. Appellant stresses, however, his objection to the court's refusal to give an instruction which he requested, to the effect

that, "where a conviction for a criminal offense is sought upon circumstantial evidence alone, the prosecution must not only show, by a preponderance of the evidence and beyond a reasonable doubt, that the alleged facts and circumstances are true, but they must be such facts and circumstances as are absolutely incompatible upon any reasonable hypothesis other than that of the guilt of the accused." We think the court fully and accurately instructed the jury upon the subjects of direct and circumstantial evidence and that its instructions substantially covered that requested by appellant. Moreover, all of the evidence in this case was not by any means circumstantial, and we think the court did not err in this respect.

It is further contended by appellant that the court erred in receiving the verdicts. The facts are that the jury returned a verdict in cause number 32125, and found appellant guilty as charged. The court received the verdict and inquired of the jury as to the prospects of their agreement upon the other indictment. The foreman said that he thought that they would not be able to agree, even after further deliberation. Over appellant's objections the court ordered the jurors to retire for further deliberation. Subsequently, the jury returned a verdict on indictment number 31770, and as stated found appellant guilty as charged in the fourth and fifth counts, and not guilty as charged in the first, second and third counts. Appellant contends that a return of the verdict in the first indictment discharged the function of the jury as to both cases and that the second verdict constituted a second jeopardy of appellant as to the other indictment. We think there is no merit in this contention. See United States v. Cotter, 2 Cir., 60 F.2d 689; and United States v. Frankel, 2 Cir., 65 F.2d 285.

Judgment affirmed.