**UNITED STATES of America,**
**Plaintiff-Appellee,**
v.
**Dr. Marion Ray WINDHAM, Defendant-**
**Appellant.**
**No. 73-2883**
**Summary Calendar.**\*

United States Court of Appeals,
Fifth Circuit.
Feb. 20, 1974.

---

\* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

**1390**

W. S. Moore, Julie Ann Epps, Jackson, Miss., for defendant-appellant.

Robert Hauberg, U. S. Atty., Donald Strange, Asst. U. S. Atty., Jackson, Miss., Meyer Rothwacks, Scott P. Crampton, Asst. Attys. Gen., Richard B. Buhrman, William D. Hyatt, Attys., Tax Div., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before BELL, SIMPSON and MORGAN, Circuit Judges.

SIMPSON, Circuit Judge:

This appeal is from conviction and sentence to pay fines totaling $10,000 for two counts of a two-count indictment charging violations of Title 26 U.S.C. Sec. 7201 by knowingly and wilfully attempting to evade and defeat a substantial portion of income taxes owed by appellant for the years 1967 and 1968.[1] The appellant, Dr. Marion Ray Windham, was a physician engaged in general practice in Jackson, Mississippi for a number of years including the tax years involved. The government in keeping with advice to the defendant prior to trial, proved its case by the net worth expenditures method. The guilty verdict was returned June 20, 1973.

The defendant on June 27, 1973 filed a lengthy motion for acquittal, or in the alternative, for a new trial, as to which a hearing was held July 6, 1973, exhibits in affidavit form were received, and oral testimony was taken. The trial judge denied this alternative motion by a lengthy opinion-order on July 20, 1973.

On appeal Dr. Windham does not contest the sufficiency of the government's proof of his guilt. Instead he raises three points of claimed error occurring at his trial which he asserts prejudiced

---

1. The appellant was also placed on probation, for five years conditioned upon payment of the fines and settlement of his civil income tax liability for the two years in question.

his right to a fair trial. We find no merit in any of the errors asserted and affirm.

The first contention is that it was error to permit Dr. Robert P. Myers, Windham's former partner, to testify that Windham performed certain operations and did not report the fees therefrom as income. The trial counsel for the government indicated in a pre-trial conference that the government would not prove specific items of unreported income in proving its case. The defense was on notice that Dr. Myers would testify as a prosecution witness, but that since he was away and not available for a statement, no Jencks Act material as to his testimony was available.

In compliance with the requirement of Holland v. United States, 1954, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150, that the government prove a likely source from which the net worth increases could have originated, Dr. Myers was first asked on direct examination whether Dr. Windham performed abortions during the tax years in question and failed to report the income. An objection was raised, and after a colloquy between court and counsel with the jury absent, the trial judge indicated that the question might be put using the words "certain operations" in place of "abortions". The witness answered affirmatively.[2] Although defense counsel moved for a mistrial, which was denied, he agreed with the court that the "abortion" question had been asked so casually that it was best not to accentuate the incident in the jury's mind by further allusion to it.

■ Appellant urges that the testimony was so highly prejudicial as to outweigh its relevance, and that failure to exclude it was prejudicial, citing Ford

v. United States, 5 Cir. 1954, 210 F.2d 313, where we reversed a police chief's tax evasion conviction because of testimony as to graft payments by prostitutes. We read Ford as having been reversed because of the speculative, hearsay nature of the testimony, not because of its content. We think the evidentiary purpose of Dr. Myers' testimony was clear, and we do not find that it was introduced or alluded to in a manner calculated to inflame the jury. United States v. Tunnell, 5 Cir. 1973, 481 F.2d 149 is a recent tax evasion net worth case in which we approved proof of criminal activity (prostitution payoffs) as a likely source of funds. In this case the trial judge's jury instructions were clear to the point that the defendant was on trial for tax evasion and for no other crimes.

■ Somewhat the same considerations govern our rejection of the defendant's claim of prejudice from the rebuttal testimony of two government witnesses to circumstances permitting the inference that he had performed operations at his apartment. During his testimony in his own defense Windham categorically denied on cross-examination that this had ever occurred.[3] One of the witnesses, a maid at the apartment house where appellant lived, testified that she had at times found syringes and bloody towels and sheets in his apartment and on one occasion found a large sum of cash hidden in his bed. The other witness, the apartment house manager testified that one of the appellant's mattresses was so blood-soaked it had to be destroyed.

This testimony was relevant, it was material in impeachment of Windham's credibility and it was proper rebuttal. No error occurred when the jury was permitted to consider it.

2. We note in passing that while Dr. Myers was never cross-examined by the defense as to this point, defense counsel alluded to "abortion" frequently and freely in his closing argument to the jury.

3. Interestingly enough, despite these denials, Dr. Windham testified in detail in connection with his motion for new trial as to numerous treatments of patients, usually first aid by him at his apartment. He denied charging a fee for these procedures. They did not include any abortion.

■ ■ The testimony of these two witnesses is linked with that of Dr. Myers in appellant's brief as the basis for contending that the government misled him by not disclosing the nature of this testimony prior to trial. As indicated above, Dr. Myers' name was furnished, although the nature of his expected testimony was not available and this was stated. That the government's witness list, gratuitously furnished the appellant without any court order requiring it, did not contain the names of the two rebuttal witnesses is not surprising. Rebuttal witnesses are a recognized exception to all witness disclosure requirements. Prejudice may not be successfully asserted in this connection; Harris v. New York, 1970, 401 U.S. 222, 225, 91 S.Ct. 643, 645, 646, 28 L.Ed.2d 1.

The final contention advanced is that the trial judge commented unfairly on the evidence and damaged the credibility of defendant's witnesses before the jury on two occasions. The point is without arguable merit.

■ The first instance occurred when the defendant's mother took the stand. The main purpose in calling her as a defense witness was to elicit testimony as to substantial direct loans exceeding $50,000, to her son as an explanation of increased funds in his possession and at his disposal during the crucial tax years. She took the stand with her old family Bible under her arm, from which she extracted records and testified as to them. She said she had used the Bible regularly for more than 30 years to record her savings. At this point the trial judge apparently in an attempt at levity interjected a rather innocuous comment:

THE COURT: "That's a funny place to keep a record in my way of thinking. It is certainly not very favorably impressing."

MR. KENDALL (appellant's counsel): "These are the facts, Sir."

THE COURT: "All right."

This is the entire incident. No objection to the comment was made prior to the motion for new trial. In the course of his full, fair and complete jury instructions the able trial judge told the jury:

"Any comments made by the court during the course of the testimony is not in any way to be considered as evidence by the jury. The jury must determine its verdict solely upon the evidence that it has heard from the witness stand consisting of testimony and exhibits, and the verdict of the jury must be derived from no other source.

And from any comments that the court has made during the course of the trial, if the jury believes that any comments made by the court is to determine the outcome of this lawsuit, then please disregard any such comments and return a verdict solely on the evidence and testimony introduced during the course of this trial.

I'm not aware of any comments, but I have nothing to do with facts in the case. I am supreme on the question of what the law is in this case, but you are supreme on the question of what the facts are as shown by the evidence, and if I have made any comment which you regard as having any bearing on what the facts are, you may disregard that."

Assuming arguendo that the trial judge's comment was improper it is clear to us beyond peradventure that any harmful effect engendered by it was cured by these instructions.

■ There is even less substance to the second and last complaint of this nature. The defendant on trial produced an expert witness to summarize the evidence. During his testimony a dispute arose between opposing counsel as to whether the expert witness was about to testify to facts which were not in evidence. In making his evidentiary ruling in the jury's presence the trial judge told defendant's counsel that the witness could not testify as to facts not in the record, but that he could "put any slant he cared to" on facts in the record. This was an accurate statement of the

law, explaining the settled function of such an expert witness, to interpret the facts in evidence in a manner favorable to his side's theory of the case. The case cited by appellant in this regard, Bursten v. United States, 5 Cir. 1968, 395 F.2d 976, 983, is totally inapposite to this situation, as well as to the comment about the Bible during the testimony of appellant's mother.

We find no merit in this appeal. The judgment appealed from is

Affirmed.